IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **EMED Technologies Corporation,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | Civil Action No. **2:17-cv-728** | |
| § | | |
| **Repro-Med Systems, Inc.** § | **JURY TRIAL DEMANDED** | |
| **(d/b/a RMS Medical Products),** § | | |
| § | | |
| **Defendant.** § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff EMED Technologies Corporation ("Plaintiff" or "EMED") alleges as follows:

1. This is a civil action brought against Defendant Repro-Med Systems, Inc. (d/b/a RMS Medical Products) ("Defendant" or "RMS") for its infringement of United States Patent No. 9,808,576 (the "'576 patent")[*].

**JURISDICTION AND VENUE**

2. This Court has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because Plaintiff's claim arises under an Act of Congress relating to patents, namely, 35 U.S.C. § 271.

3. This Court also has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiff is a citizen of Nevada and California; Defendant is a citizen of New York; and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

---

[*] Attached as Exhibit A.

1

4. This Court has personal jurisdiction over Defendants because: Defendants are present within or has minimum contacts within the State of Texas and this judicial district; Defendants have purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district; Defendants regularly conducts business within the State of Texas and within this judicial district; and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in the State of Texas and in this judicial district.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b). Defendants have committed acts of infringement and have a regular and established place of business in this District and through its distributors such as Owens & Minor and Rightway Medical. Further, venue is proper because Defendants conduct substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

**PARTIES**

6. Plaintiff EMED Technologies Corporation is a Nevada corporation having its principal place of business in El Dorado Hills, California.

7. On information and belief, Defendant Repro-Med Systems, Inc. (d/b/a RMS Medical Products), is a corporation organized and existing under the laws of New York, with a principal place of business at 24 Carpenter Road, Chester, New York 10918, and a registered agent for service of process at Andrew I. Sealfon, 24 Carpenter Road, Chester, New York 10918

8. RMS is subject to the Court's personal jurisdiction with respect to this civil action because it has committed acts by which it has purposefully availed itself of the privilege of conducting activities within Texas, and this action relates to those acts:

  (a) as alleged in Paragraph 21 below, RMS has directly infringed the '576 patent by selling or offering for sale infringing products to distributors located in this District; and

  (b) as alleged in Paragraph 22 below, RMS has indirectly infringed the '576 patent by inducing its distributors to sell infringing products to consumers located in Texas and by inducing such consumers to use infringing products.

## GENERAL ALLEGATIONS

9. The products at issue in this action are medical devices that aid in the treatment of a potentially fatal condition known as Primary Immunodeficiency Disease ("PIDD"). Individuals who suffer from PIDD need immunoglobulin (human plasma and antibodies) in order to lead normal, productive lives. To enhance patient safety and comfort, immunoglobulin has increasingly come to be administered to patients in their homes by means of subcutaneous (under-the-skin) infusions. In this Subcutaneous Immunoglobulin ("SCIg") therapy, mechanical infusion pumps deliver the necessary immunoglobulin via plastic tubing and subcutaneous needles. The SCIg needles that penetrate patients' skin are generally less than one inch long and come in different gauges (diameters).

10. EMED has been a pioneer in the development of SCIg and other infusion therapy devices. In particular, EMED pioneered the development of needle sets specifically optimized for infusion of immunoglobulin to patients with PIDD in 2005. Both for obvious reasons and in light of the Needlestick Safety and Prevention Act, Pub. L. No. 106-430 (2001), safety features are especially important when it comes to SCIg needles. In this regard, EMED has invented various ways to protect patients and medical practitioners from inadvertent needle sticks.

11. One of these inventions is disclosed in United States Patent No. 9,808,576, titled "Devices and Methods for Protecting a User from a Sharp Tip of a Medical Needle," which was issued

by the U.S. Patent and Trademark Office on November 7, 2017. A true and complete copy of the '576 Patent is attached hereto as Exhibit A.

12. EMED's CEO Paul Lambert is the inventor of the patented device, and EMED is the owner of the '576 Patent.

13. The invention disclosed and claimed in the '576 Patent allows for the safe removal of subcutaneous needles from patients and the safe disposal of needles and needle sets. In particular, the invention solves the needle safety problem by sheathing the needle within a protective pair of folding wings during and after removal from a patient's skin.

14. Since before 2014, EMED has been selling "SCIg Safety Needle Sets" that incorporate a safety design similar to the design disclosed and claimed in the '576 Patent, and EMED continues to sell those products.

15. Since before 2014, and in direct competition with EMED, RMS has been selling "HIgH-Flo Subcutaneous Safety Needle Sets™" ("HIgH-Flo Needle Sets"), and RMS continues to sell those products.

16. Although EMED has never licensed the '576 Patent to RMS, the HIgH-Flo Needle Sets sold by RMS incorporate the safety design disclosed and claimed in that patent.

17. RMS's sales of HIgH-Flo Needle Sets in direct competition with EMED's SCIg Safety Needle Sets have harmed, and are continuing to harm, EMED's market share, revenues, and brand recognition in the market for safety needle sets for SCIg therapy.

**CLAIM FOR RELIEF**

**(Infringement of United States Patent No. 9,808,576, 35 U.S.C. § 281)**

18. EMED hereby incorporates Paragraphs 1 through 17 as if set forth in full herein.

19. EMED is the sole owner of all rights, title, and interest in and to the '576 Patent.

20. EMED has not licensed or otherwise authorized RMS to perform any activities or to make, use, offer for sale, or sell any products that employ the invention of the '576 Patent.

21. RMS has been directly infringing and continues to directly infringe, either literally or under the doctrine of equivalents, the '576 Patent by making, using, offering to sell, or selling HIgH-Flo Needle Sets within the United States, which products practice one or more claims of the '576 Patent, including at least claims 1-3.

22. RMS has been indirectly infringing and continues to indirectly infringe, either literally or under the doctrine of equivalents, the '576 Patent by inducing its distributors to sell or to offer to sell HIgH-Flo Needle Sets in the United States and by inducing its consumers to use HIgH-Flo Needle Sets in the United States, which products practice one or more claims of the '576 Patent, including at least claims 1-3.

23. In so inducing its distributors and consumers, RMS acted with knowledge that its HIgH-Flo Needle Sets infringed the '576 Patent.

24. RMS's infringement of the '576 Patent has been and continues to be willful, in that RMS actually knew, or it was so obvious that RMS should have known, that its actions constituted infringement of a valid and enforceable patent.

25. RMS's infringement of the '576 Patent has irreparably injured and will continue to irreparably injure EMED unless and until such infringement is enjoined by this Court.

26. For RMS's infringement of the '576 Patent, EMED is entitled pursuant to 35 U.S.C. § 283 to a permanent injunction in accordance with the principles of equity to prevent the violation of its rights secured by the patent.

27. For RMS's infringement of the '576 Patent, EMED is further entitled pursuant to 35 U.S.C. § 284 to damages (including treble damages), together with interest and costs as fixed by the Court.

28. For RMS's infringement of the '576 Patent, EMED is further entitled pursuant to 35 U.S.C. § 285 to reasonable attorney fees.

29. Claim 1 of the '576 Patent is a device for protecting a user from the sharp tip of a needle with the elements of a central body portion; a pair of wings; a mechanical fastener <u>consisting</u> of a lip.

30. Infringement is illustrated through the following explanation with reference to an image of an exemplary RMS High Flo Subcutaneous Safety Needle Set ("Exemplary Accused Infringing Device"):



31. The Exemplary Accused Infringing Device is a device for protecting a user from the sharp tip of a needle with the elements of a central body portion; a pair of wings; a mechanical fastener consisting of a lip, among other elements, and therefore infringes Claims 1-3 of the '576 patent, which among other elements claim a central body portion; a pair of wings; a mechanical fastener consisting of a lip.

**PRAYER FOR RELIEF**

32. WHEREFORE, EMED prays for relief as follows:

    a. enter judgment that Defendant have infringed the claims of the '576 patent;

b.     award EMED damages in an amount sufficient to compensate it for Defendants' infringement of the '576 patent, in an amount no less than a reasonable royalty or lost profits, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

c.     award EMED an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

d.     declare this case to be "exceptional" under 35 U.S.C. § 285 and award EMED its attorneys' fees, expenses, and costs incurred in this action;

e.     declare Defendant's infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. §284;

f.     issue a decree addressing future infringement that either (i) awards a permanent injunction enjoining Defendant and their agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant, from infringing the claims of the Patents-in-Suit or (ii) award damages for future infringement in lieu of an injunction, in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and,

g.     award EMED such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Ramey & Schwaller, LLP**

By: /s/ William P. Ramey, III
     William P. Ramey, III

Texas Bar No. 24027643
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

John B. Thomas
jthomas@hicks-thomas.com
Texas Bar No. 19856150
Hicks Thomas LLP
700 Louisiana Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 547-9100
Facsimile: (713) 547-9150

*Counsel for Plaintiff*
*EMED Technologies Corporation*