IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EMED TECHNOLOGIES CORPORATION, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:17-cv-728 |
| | ) | |
| REPRO-MED SYSTEMS, INC. | ) | JURY TRIAL DEMANDED |
| (D/B/A RMS MEDICAL PRODUCTS), | ) | |
| | ) | |
| DEFENDANT. | ) | |

PLAINTIFF'S RESPONSE TO REPRO-MED SYSTEMS, INC. (D/B/A RMS MEDICAL
PRODUCTS)'S MOTION TO DISMISS OR TRANSFER UNDER RULE 12(B)(3) AND
REQUEST FOR IMMEDIATE VENUE DISCOVERY

# Table of Contents

I.   VENUE IS PROPER IN THE EASTERN DISTRICT OF TEXAS. ..................................... 1

   A.   *TC Heartland* only addressed where a corporate entity resides. ......................................... 1

   B.   The Federal Circuit's Cray Decision Changed the Law for What is a Regular and Established Place of Business. ................................................................................................. 1

   C.   Discovery is needed to determine if RMS has a Regular and Established Place of Business in the Eastern District of Texas. ................................................................................ 4

      1)   RMS does business in this District through at least two distributors located in this District; ............................................................................................................................... 4

      2)   RMS labelled products are sold at Rightway Medical (one of the distributors); ............ 4

      3)   RMS HIgH Flo needle sets, products alleged to infringe, are sold at the Rightway Medical, LLC location in this District; ................................................................................ 4

      4)   RMS does business in other Districts in the State of Texas and, ..................................... 4

      5)   RMS is not licensed to do business in the State of Texas even though it is doing business in the State of Texas through its distributors. ......................................................... 4

   D.   Plaintiff requests leave to amend if the Court determines its venue pleadings not sufficient in its Original Complaint ............................................................................................................ 6

II.   RMS HAS NOT PROVEN THAT NEW YORK IS MORE CONVENIENT ....................... 6

   A.   RMS Has Not Proven a Compelling Case for Transfer ...................................................... 6

   B.   The Private and Public Factors Weighed Against Transfer ................................................. 7

      1)   Relative Ease of Access to Sources of Proof Weighs Against Transfer ......................... 7

      2)   Availability of Compulsory Process to Secure Witnesses' Attendance Weighs Against Transfer.............................................................................................................................. 11

      3)   Cost of Attendance for Willing Witnesses Weighs Against Transfer............................ 12

      4)   Other Practical Problems that Make a Trial Easy, Expeditious and Inexpensive Weigh Against Transfer. ............................................................................................................... 13

      5)   Local Interest in Having Localized Interests Decided at Home Weighs Against Transfer............................................................................................................................. 14

      6)   Forum's Familiarity with the Governing Law Weighs Against Transfer. ..................... 14

      7)   Avoidance of Unnecessary Problems of Conflicts of Laws or in the Application of Foreign Law Weighs Against Transfer. ......................................................................... 15

III.   CONCLUSION AND PRAYER ......................................................................................... 15

# Table of Authorities

## Cases

*3M v. Johnson & Johnson Prods.*, 1986 U.S. Dist. LEXIS 15763 (D. Minn. 1986). ................. 2, 3

*Abraxis Bioscience, Inc. v. Navinta LLC*, 672 F.3d 1239 (Fed. Cir. 2011) (O'Malley, J. dissenting), *cert. denied*, 132 S. Ct. 115 (2011) ....................................................................... 15

*Abstrax, Inc. v. Hewlett-Packard Co.*, No. 2:14-cv-158-JRG, 2014 U.S. Dist. LEXIS 155805 (E.D. Tex. Nov. 3, 2014) ....................................................................................................... 13

*Advanced Processor Techs. LLC. v. Atmel Corp.*, No. 2:12-CV-152-JRG-RSP, 2013 U.S. Dist. LEXIS 43050 (E.D. Tex. Mar. 26, 2013) .................................................................... 8, 9

*Am. GNC Corp. v. ZTE Corp.*, No. 4:17CV620, 2017 U.S. Dist. LEXIS 184470 (E.D. Tex., November 7, 2017). ................................................................................................................... 4

*Carruthers v. Amtrak*, No. 95 Civ 0369 (PKL), 1995 U.S. Dist. LEXIS 8740 (S.D.N.Y. June 26, 1995) ...................................................................................................................................... 15

*Ferens v. John Deere Co.*, 494 U.S. 516 (1990) .......................................................................... 14

*Good Tech. Corp. v. AirWatch, LLC*, Civ. Act. No. 14-1092-LPS-CJB, 2015 U.S. Dist. LEXIS 6841 (D. Del. Jan. 21, 2015) ............................................................................................... 13

*In re Apple Inc.*, 743 F.3d 1377 (Fed. Cir. 2014) ...................................................................... 6, 7

*In re Barnes & Noble, Inc.*, 743 F.3d 1381 (Fed. Cir. 2014) ................................................. 11, 13

*In re Cordis*, 769 F.2d 733 (Fed. Cir.1985) .............................................................................. 2, 3

*In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017). ....................................................................... 2, 5

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ........................................................ 6, 7, 12

*In re VTech Communs., Inc.*, No. 909, 2010 U.S. App. LEXIS 372 (Fed. Cir. Jan. 6, 2010) .. 7, 11

*Latini*, 90 F. Supp. at 214 ............................................................................................................... 3

*McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 U.S. Dist. LEXIS 178823 (D. Del. Dec. 13, 2013) ................................................................................... 13

*Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757 (E.D. Tex. 2000) .................................. 6, 8

*Pender v. Bank of Am. Corp.*, 788 F.3d 354 (4th Cir. 2015) ....................................................... 14

*Rockstar Consortium U.S. LP v. Google Inc.*, No. 2:13-CV-893-JRG-RSP, 2014 U.S. Dist. LEXIS 133758 (E.D. Tex. Sept. 23, 2014) ....................................................................... 8, 9, 10

*Schroeder v. Tracor, Inc.*, No. 99-1281, 1999 U.S. App. LEXIS 30386 (Fed. Cir. Nov. 5, 1999), *cert. denied*, 530 U.S. 1215 (2000) ....................................................................................... 15

*Southwestern Bell Telephone, L.P. v. Arthur Collins, Inc.*, Civ. Act. No. 3: 04-CV-0669-B, 2005 WL 6225305 (N.D. Tex. Oct. 14, 2015) ...................................................................... 14

*Stiegele*, 213 F. Supp. at 495 ............................................................................. 2, 3, 4

*Stragent LLC v. Audi AG*, No. 6:10cv227 LED-JDL, 2011 U.S. Dist. LEXIS 79688 (E.D. Tex. July 18, 2011) ................................................................................................. 14

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC* 137 S. Ct. 1514, L. Ed. 2d 816 (2017). . 1, 2, 6

*TQP Dev., LLC v. Yelp Inc.*, No. 2:12-CV-656, 2013 U.S. Dist. LEXIS 141076 (E.D. Tex. Sept. 29, 2013) .............................................................................................................. 13

**Statutes**

28 U.S.C. §1400(b). ....................................................................................... 1,2

Traxcell Technologies, LLC. ("Traxcell") respectfully files this response to Defendant Repro-Med Systems, Inc. (d/b/a RMS Medical Products) (hereinafter referred to as "RMS") Motion to Dismiss or Transfer Under Rule 12(b)(3) ("Motion to Dismiss")[1] and requests immediate discovery related to venue.   Plaintiff responds by asserting that Defendant has committed acts of infringement in this District and has a regular and established place of business in this District and Forum.[2]  Further, Plaintiff asserts RMS has not established that transfer to New York would be more convenient.

## I.   VENUE IS PROPER IN THE EASTERN DISTRICT OF TEXAS.

### A.   *TC Heartland* only addressed where a corporate entity resides.

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*[3] did not change 28 U.S.C. §1400(b). Venue for a patent case is proper where the defendant has committed acts of infringement and has a regular and established place of business.[4]  Venue is proper in the Eastern District of Texas because RMS has a regular and established place of business in this District, namely at least the location of two distributors it uses to sell product in this District and Forum,[5] and RMS is infringing in the Eastern District of Texas, a fact it does not deny.[6]  This Court has not explicitly ruled on whether a Distributor can be a place of business of the defendant.

### B.   The Federal Circuit's Cray Decision Changed the Law for What is a Regular and Established Place of Business.

Venue in patent infringement actions is proper only where (1) "the defendant resides" or

---

[1] *See* Document Number (ECF) #7.
[2] *See, e.g.,* 28 U.S.C. § 1400(b).
[3] *TC Heartland LLC v. Kraft Foods Grp. Brands LLC* 137 S. Ct. 1514, 1520, 197 L. Ed. 2d 816 (2017).
[4] *See, e.g.,* 28 U.S.C. § 1400
[5] *See* Declaration of William P. Ramey, III ("Ramey Decl."), at Exs. A and B.
[6] *See* ECF #7, *generally* and ECF 7-1, *generally.*

(2) "where the defendant has committed acts of infringement and has a regular and established place of business."[7]  A defendant "resides" only in its state of incorporation.[8]  The second prong of *§ 1400(b)* requires a "regular and established place of business," which must be (1) "a physical place in the district," (2) that is "a regular and established place of business," and (3) "it must be the place of the defendant."[9]

In-district actions supportive of a finding of a regular and established place of business include:

- storing literature, documents, or products in that office;[10]
- storing records in that office;[11]
- keeping substantial sums (e.g., $30,000) of money in that office;[12]
- completing paperwork and performing of administrative tasks in that office;[13]
- keeping order forms and advertising literature in an office;[14]
- submitting reports and records;[15]
- an employee's claiming of an income tax deduction for an office in the employee's residential home;[16]
- engagement, in the district, of a secretarial service to receive messages, provide typing services, mail business literature, and receive shipments of sales literature;[17]
- defendant's payment of such secretarial services, whether directly or through reimbursing the employee using his home as the office;[18]
- listing, of business cards, of the phone number answered by the secretarial service;[19]
- listing the address of the secretarial service as the defendant's address;[20]
- using business cards with the residential-home-office address and phone number;[21]

---

[7] *28 U.S.C. § 1400(b)* ; *TC Heartland*, 137 S. Ct. at 1520.

[8] *TC Heartland*, 137 S. Ct. at 1521.

[9] *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

[10] *See In re Cordis*, 769 F.2d 733, 735, 737 (Fed. Cir.1985).

[11] *3M v. Johnson & Johnson Prods.*, 1986 U.S. Dist. LEXIS 15763, at *14 (D. Minn. 1986).

[12] *See Cordis*, 769 F.2d at 735.

[13] *See id.*

[14] *Stiegele*, 213 F. Supp. at 495.

[15] *3M*, 1986 U.S. Dist. LEXIS 15763, at **13, 14.

[16] *See Cordis*, 769 F.2d at 735.

[17] *See id.*

[18] *See id.*

[19] *See id.*

[20] *See id.*

[21] *3M*, 1986 U.S. Dist. LEXIS 15763, at *14.

- answering phone calls to such phone number by answering with the defendant's name;[22]
- salesmen and employees' use of business cards listing the in-district address;[23]
- listing of the in-district address in a trade publication;[24]
- including in an in-district phone directory the defendant's name and phone number; [25]
- listing defendant in "yellow pages;"[26]
- listing of defendant's name in a tenant's building directory;[27]
- listing in a phone directory the defendant's address as that of its in-district office;[28]
- having defendant's name on an office door;[29]
- storing product samples in sales representative's residential-home offices;[30]
- displaying samples of defendant's products in an office;[31]
- using sales representative's home addresses for business correspondence;[32]
- accepting product orders out-of-state only after the customer's credit was checked in district;[33]
- hiring an independent sales company;[34]
- soliciting orders;[35]
- "merely securing orders and forwarding them" to another office;[36]
- generating substantial income;[37]
- paying office rent;[38]
- paying the office phone bill, even if only by reimbursement;[39]
- demonstrating defendant's products;[40]
- office receiving of defendant's product returned for servicing or repair and forwarding

---

[22] *See Cordis*, 769 F.2d at 735.

[23] *Stiegele*, 213 F. Supp. at 495.

[24] *Id.*

[25] *Latini*, 90 F. Supp. at 214; *see also Cordis*, 769 F.2d at 735.

[26] *3M*, 1986 U.S. Dist. LEXIS 15763, at **12, 13.

[27] *Stiegele*, 213 F. Supp. at 495.

[28] *Id.*

[29] *Latini*, 90 F. Supp. at 214.

[30] *3M*, 1986 U.S. Dist. LEXIS 15763, at **12, 14.

[31] *Stiegele*, 213 F. Supp. at 495.

[32] *3M*, 1986 U.S. Dist. LEXIS 15763, at *12.

[33] *Id.*

[34] *Id.* at *13.

[35] *Id.* at **13, 14; *Stiegele*, 213 F. Supp. at 495; *Latini*, 90 F. Supp. at 214.

[36] *Latini*, 90 F. Supp. at 214.

[37] *3M*, 1986 U.S. Dist. LEXIS 15763, at *13.

[38] *Latini*, 90 F. Supp. at 214.

[39] *Id.*

[40] *3M*, 1986 U.S. Dist. LEXIS 15763, at *13; *Stiegele*, 213 F. Supp. at 495.

them for actual servicing and repair;[41] and,

- contracting with a call center.[42]

### C.   Discovery is needed to determine if RMS has a Regular and Established Place of Business in the Eastern District of Texas.

Plaintiff's initial investigation reveals:

1)   RMS does business in this District through at least two distributors located in this District;[43]
2)   RMS branded products are sold at Rightway Medical (one of the distributors);[44]
3)   RMS HIgH Flo needle sets, products alleged to infringe, are sold at the Rightway Medical, LLC location in this District;[45]
4)   RMS does business in other Districts in the State of Texas;[46] and,
5)   RMS is not licensed to do business in the State of Texas even though it is doing business in the State of Texas through its distributors.[47]

RMS's Motion to Dismiss states that they have no facilities in the Eastern District of Texas,[48] or even Texas.[49]  Further, RMS states that it has no employees in the State of Texas.[50]  However, somehow, RMS branded-products alleged to infringe in this lawsuit are being sold in and from this District.[51]  Accordingly, there is a discrepancy between evidence plaintiff discovered, namely the RMS distributors, and RMS's CEO declaration.  Therefore, Plaintiff requests that it be allowed

---

[41] *Stiegele*, 213 F. Supp. at 495.

[42] *See* Am. GNC Corp. v. ZTE Corp., No. 4:17CV620, 2017 U.S. Dist. LEXIS 184470, *4 (E.D. Tex., November 7, 2017).

[43] *See* Ramey Decl. at Exs. B (Owens & Minor located at Flower Mound) and C (Rightway Medical, LLC located at McKinney).

[44] *See* Ramey Decl. at Ex. C1-C7, RMS products sold by RightWay Medical are RMS branded through the RMS SKU.

[45] *See id.* at

[46] *See* Declaration of Paul Lambert ("Lambert Decl.") at 6.

[47] *See* Ramey Decl. at 8.

[48] *See* ECF #7-1 at 4.

[49] *See* id.

[50] *See* Ramey Decl. at 5, 8 and 9.

[51] *See* Ramey Decl. at Exs. A, B, C, and C1-C7 and at 8.

4

to immediately start discovery related to venue to inquire as to whether RMS has a place of business in this District.  In conducting venue discovery, Plaintiff intends to:

- serve documents like exhibits D and E to the Declaration of William P. Ramey, III, on RMS[52];

- notice a corporate representative from human resources at RMS to provide testimony related to employees in Texas;

- notice sales persons or sales engineers for RMS covering the State of Texas;

- notice for deposition RMS's declarant Andrew Sealfon; and,

- notice for deposition other corporate witnesses related to venue.

Venue discovery will determine whether RMS engages in business through its distributors such that the distributors are a place of business of the defendant.[53]

The Federal Circuit, in commenting in *Cordis*, hinted that a distribution center is a "place of business" of the defendant.

> [I]t was undisputable that Cordis affirmatively acted to make permanent operations within that district to service its customers there. Cordis publicly advertised [] a secretarial service office located within the district as a place of business of its own and used its employees' homes like ***distribution centers***[.][54] (emphasis added)

Here, RMS uses at least two distributorships located in the Eastern District of Texas for selling products alleged to infringe.  Accordingly, RMS has a regular and established place of business in this District.

If the Court is inclined to grant Defendant's Motion, Plaintiff requests that the Court defer ruling on RMS's Motion to Dismiss to allow Plaintiff time for venue discovery.

---

[52] *See* Ramey Decl. at Ex. C, Exemplary Request for production and at Ex. D, Exemplary Request for Admission.
[53] *See, e.g., In re Cray Inc.*, 871 F.3d 1355, 1364 (Fed. Cir. 2017).
[54] *In re Cray Inc.*, 871 F.3d 1355, 1364-1365 (Fed. Cir. 2017).

**D. Plaintiff requests leave to amend if the Court determines its venue pleadings not sufficient in its Original Complaint**

If the Court determines Plaintiff's venue pleadings are insufficient, Plaintiff requests leave to amend. This request for leave is in the interests of justice, not for purposes of delay and will not unduly prejudice Defendants. Moreover, leave should be freely granted as the decision from *Cray*[55] is new and the area of law unsettled. If RMS uses distributorships so that it does not need to open a physical storefront, then the use of a distributorship is sufficient to establish a place of business.

## II. RMS HAS NOT PROVEN THAT NEW YORK IS MORE CONVENIENT

### A. RMS Has Not Proven a Compelling Case for Transfer

A party seeking transfer of venue must show that the balance of factors substantially weighs in favor of transfer.[56] Here, the balance of the factors does not weigh substantially in favor of Defendant RMS.

To carry its heavy burden to prove that the Southern District of New York is "clearly more convenient" than the Eastern District of Texas,[57] Defendant cannot rely on vague, speculative venue assertions.[58] For instance, a party cannot rely on vague assertions that witnesses would be unavailable; rather, the party must identify the purported witnesses.[59] Here, RMS identifies no witness other than the declarant:

---

[55] *TC Heartland*, 137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017).

[56] *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 768, 774 (E.D. Tex. 2000).

[57] *In re Apple Inc.*, 743 F.3d 1377, 1378 (Fed. Cir. 2014) (stating the "clearly more convenient" standard).

[58] *Id.* at 1378, 1379 (criticizing defendant's "lack of specificity" and "vague assertions" that caused any assessment to be "merely speculative.").

[59] *Id.* at 1378, 1379 (criticizing defendant's vague assertions, lack of specificity, and "failure to *identify* willing witnesses" and distinguishing *Genentech* because "[i]n that case, however, the petitioner identified at least ten *specific witnesses* [emphasis added] in the transferee forum, two

9. Requiring officers and employees—including myself—to travel to Texas for these proceedings will put a strain on our business. As RMS is located in, and operated from, Chester New York, requiring senior officers to appear in Texas would impose an undue hardship for many reasons. Not only would travel require a lengthy car ride of over an hour and a half to major airports, local accommodations in Texas would need to be arranged. Management of the company from Texas would be difficult, requiring any regular or new meetings to be reset, and projects to be placed on hold, and attendance at trade shows forfeited.

10. RMS also intends to call non-party witnesses who would be forced to travel to Texas if the proceedings remained here. Should RMS desire to call expert witnesses, such as for example an FDA expert it has worked with in the past, appearance for this matter in Texas would impose an undue hardship upon him as well. And again, as management and control is based out of Chester, New York, additional experts and/or witnesses likely relevant to assist in this case are local to the New York state area, and not Texas.

60

RMS's Motion to transfer should fail on the basis that specific witnesses are not identified. This is exactly the type of vague assertion rejected by the Federal Circuit.[61]

## B. The Private and Public Factors Weighed Against Transfer

### 1) Relative Ease of Access to Sources of Proof Weighs Against Transfer

Although RMS argues that its "documentary and other physical evidence"[62] are "located at the company's Chester, New York headquarters[.]"[63] ultimately RMS identifies no non-employee witnesses in New York.[64] As such, RMS presents no evidence concerning witnesses involved in the development of the accused products. At most, RMS has established that some of its "documentary and other physical evidence" would need to be copied to a 'thumb drive' before being brought to Texas. There is no disclosure where the other "documentary and other physical evidence" is located.

---

of which were attorneys responsible for the prosecution of the patents-in-suit[.]" Emphases added); *see also In re VTech Commc'ns, Inc.*, No. 909, 2010 U.S. App. LEXIS 372, at *7 (Fed. Cir. Jan. 6, 2010) (distinguishing *Genentech* in part because "there was at least one *identified* non-party witness who was a resident of the Eastern District of Texas." Emphases added).

[60] *See* Declaration of Andy Sealfon ("Sealfon Decl.") (D.N. 7-1) at ¶s 9-10.

[61] *See In re Apple Inc.*, 743 F.3d at 1378-9. )

[62] *See* Sealfon Decl. (D.N. 7-1) at ¶s 7-10.

[63] *See* id.

[64] *See* id.

On the other hand, several specific, identifiable key witnesses reside in Texas, not far from the Eastern District of Texas.[65]

Although RMS's argument tries to create the impression that all documents it discusses are *in* New York, its evidence indicates some of the documents are in its New York office. RMS ambiguously and noticeably is silent regarding the quantity of relevant documents in New York and those that are located elsewhere. "[T]he focus of the current law is on the physical location of evidence and documents, and not merely where the evidence or documents may be conveniently accessed."[66]

Further, "it's the location of key, non-party witnesses that dominates" the convenience analysis.[67] RMS identifies one nonparty witness, but refers to them as an expert, not a fact witness.[68] As such, there is no evidence that non-party witnesses would be forced to travel.

"The duty of candor . . . is especially important in the Motion to Transfer context[.]"[69]   A transfer-seeking party's presentation of less than complete information regarding the locations of its relevant documents and witnesses weighs against a transfer.[70]

This Court has rejected similar motion-to-transfer arguments that were supported by declarations having vague or craftily worded testimony and provided an incomplete identification of the location of all the relevant documents and witnesses:

---

[65] See list of certain witnesses at ¶ 10-11 to the Ramey Decl. and pages 10-11 of this document, providing a brief description of the testimony sought.

[66] *Advanced Processor Techs. LLC v. Atmel Corp.*, No. 2:12-CV-152-JRG-RSP, 2013 U.S. Dist. LEXIS 43050, at *13 (E.D. Tex. Mar. 26, 2013).

[67] *Mohamed*, 90 F. Supp. 2d at 775.

[68] Sealfon Decl. (D.N. 7-1) at ¶ 10.

[69] *Rockstar Consortium U.S. LP v. Google Inc.*, No. 2:13-CV-893-JRG-RSP, 2014 U.S. Dist. LEXIS 133758, at *25 (E.D. Tex. Sept. 23, 2014) ; *see also id.* at *6

[70] *Id.* at *6, *10, *11, *14, *15.

8

[T]he Court concludes that Atmel is unwilling to identify where relevant documents are physically stored, apart from San Jose. Mr. Swan's declaration very carefully identifies San Jose as a location where some documents are stored, but refuses to identify the other locations, and merely states that those documents can be accessed from San Jose. Given Atmel's admissions that all design and development work occurs overseas, it seems likely that significant physical evidence or documents are maintained outside of San Jose. [71]

* * *

[T]he record is entirely devoid of any measure of the relative quantities of proof available at any location. [72]

* * *

Moreover, Movants have chosen not to provide any location information for any of the remaining 47 prior art references, which suggests that third party sources of prior art evidence are more distributed than perhaps is suggested by Movants' highlighted prior art references. [73]

* * *

. . . Google's Motion provides neither evidence of where its documents are actually located nor evidence that these documents are more available or accessible from the Northern District of California than they would be from the Eastern District of Texas. As to its facilities and infrastructure, Google's Motion simply recites the location of its headquarters but is essentially silent as to all other Google locations (e.g. Google's briefing says nothing of its Dallas location). A careful examination of Mr. Dubey's declaration makes it unmistakably clear both that other relevant Google locations exist and that Mr. Dubey's declaration was worded to avoid statements as to locations other than Google's headquarters. This conclusion is confirmed by the Court's review of the briefing on Google's Motion. The Court is significantly concerned that Google is not being fully candid with the Court regarding the location of its relevant documents and facilities.[74]

* * *

. . . Google's Motion does, at least, identify where its employees "with relevant technical knowledge" are "predominantly" located, but the Court observes that Google omits to mention where the remainder of such employees are located. As with Google's relevant documents, facilities, and infrastructure, the Court is concerned that it is being presented with an incomplete and misleading factual record. [75]

---

[71] *Advanced Processor Techs. LLC*, 2013 U.S. Dist. LEXIS 43050, at *13, *14.

[72] *Id.* at *15.

[73] *Id.* at *20, *21.

[74] *Rockstar Consortium U.S. LP*, No. 2:13-CV-893-JRG-RSP, 2014 U.S. Dist. LEXIS 133758 at *9 (E.D. Tex. Sept. 23, 2014).

[75] *Id.* at *10, *11.

RMS's motion and evidence are similar to the defendant's motion and evidence in *Rockstar Consortium U.S. LP v. Google Inc.*, except that RMS's evidence is even less detailed than the *Rockstar* transfer motion (which this Court denied) and evidence.[76]

Here, EMED will call several Texas non-party witnesses to trial and deposition, all within the subpoena power of the Court. Each of these companies is an RMS distributor or customer located in Texas and EMED intends to call for testimony at trail and deposition at least one representative from each of these companies.

1.    Coram Dallas Branch located at 10105 Technology Blvd. West, Ste. 102, Dallas, TX 75220;

2.    MSD (Medical Specialties Distributors) Inc. located at 8726 N. Royal Ln., Irving, TX 75063;

3.    Diplomat Pharmacy Richardson located at1761 International Pkwy., Ste. 115, Richardson, TX 75081;

4.    Diplomat Pharmacy Houston located at 11303 Chimney Rock Rd., Ste. 105/108, Houston, TX 77035;

5.    OptionCare San Antonio located at 14220 Northbrook Dr., Ste. 100B, San Antonio, TX 78232;

6.    OptionCare Irving located at 6611 N. Belt Line Rd., Ste. 100, Irving, TX 75063;

7.    OptionCare Houston 1 located at 9030 Kirby Dr., Houston, TX 77054; and,

8.    OptionCare Houston 2 located at 3600 S. Gessner Rd., Ste. 100, Houston, TX 77063.[77]

---

[76] *Rockstar Consortium U.S. LP*, No. 2:13-CV-893-JRG-RSP, 2014 U.S. Dist. LEXIS 133758 at *10, *11.

[77] *See* Declaration of Paul Lambert ("Lambert Decl.") at ¶6.

EMED likewise intends to call to trial and deposition one or more representatives from RMS's distributors located in this District, Owens & Minor located at Flower Mound, and Rightway Medical, LLC located at McKinney.[78]

Plaintiff will call a representative from each of the organizations as a witness for trial and deposition to discuss:

1.  the RMS Accused Products;

2.  the EMED infringed products;

3.  why RMS chose its needle design;

4.  the marketing by RMS of the accused infringing devices to the distributors;

5.  if necessary, secondary considerations of non-obviousness for the '576 patent;

6.  the willfulness of RMS's infringement, i.e., whether RMS knew of the patent and copied EMED's device regardless of the risk,[79] among other issues.

### 2) Availability of Compulsory Process to Secure Witnesses' Attendance Weighs Against Transfer.

Defendant RMS itself can—without legal process—require its own employees to attend trial.[80] Certainly Defendant has offered no evidence showing that its employees would refuse RMS's instruction to appear in Texas to provide testimony.

---

[78] *See* Ramey Decl. at Exs. B (Owens & Minor located at Flower Mound) and C (Rightway Medical, LLC located at McKinney).

[79] The non-obviousness factors include: (1) The invention's commercial success; (2) Long felt but unresolved needs; (3) The failure of others; (4) Skepticism by expert; (5) Praise by others; (6) Teaching away by others; (7) Recognition of a problem; and, (8) Copying of the invention by competitors.

[80] *See In re VTech Commc'ns, Inc.*, 2010 U.S. App. LEXIS 372, at *2 (stating, "The [Eastern District of Texas] trial court also explained that despite more witnesses residing in Oregon than Texas, the Oregon witnesses were party witnesses and could be compelled by their employer to testify at trial."); *In re Barnes & Noble, Inc.*, 743 F.3d 1381, 1383 (Fed. Cir. 2014)  (stating, "[Defendant]cites no Sixth Circuit case that would suggest that the district court erred in requiring it to demonstrate its employees would be unwilling or unable to testify if the case was tried in the Western District of Tennessee.").

The many Texas witnesses Plaintiff has identified[81] are subject to compulsory process by the Eastern District of Texas, but not the Southern District of New York. RMS identifies no non-party witnesses except a potential expert RMS may or may not call residing in Virginia.[82] Just as RMS cherry-picks which relevant documents to address rather than presenting evidence regarding where all relevant documents are located, RMS fails to present a complete picture of where its relevant witnesses currently reside.

### 3)  Cost of Attendance for Willing Witnesses Weighs Against Transfer.

Defendant RMS's motion states,

> RMS is likely to call several non-party witnesses, including an expert who does not reside in Texas, but in Northern Virginia, [internal citation]—which is substantially closer to the Southern District of New York. In a similar vein, additional experts and witnesses who have worked with RMS on the issues relevant to this lawsuit are more likely to live in the New York area, given that the company operates there. [83]

Transfer is favored when a substantial number of material witnesses reside within the transferee venue."[84]  But RMS has only specifically identified one fact witness, a party-witness, Andy Sealfon, residing in the Southern District of New York, not a "substantial number" of material witnesses and no non-party witnesses.  RMS's motion at most states that it is "likely" to call several non-party witnesses but fails to identify any of them.

On the other hand, the cost of attendance of presenting trial testimony by the Texas witnesses Plaintiff has identified[85] increases significantly if this action is transferred from the Eastern District of Texas to the Southern District of New York.

---

[81] *See* argument above.
[82] *See* Sealfon Decl. (ECF 7-1) at ¶10.
[83] *See* ECF 7 at 6.
[84] *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) .
[85] Lambert Decl. at ¶6 and Ramey Decl. at ¶13.

Thus, this factor weighs against transfer.

### 4) Other Practical Problems that Make a Trial Easy, Expeditious and Inexpensive Weigh Against Transfer.

Plaintiff previously filed a lawsuit in the Eastern District of Texas involving another patent in the same family, namely U.S. Patent No. 8,961,467, in cause number 2:15-cv-01167. The considerations of co-pending cases involving the same patent are permissible considerations in ruling on a motion to transfer.[86]  The consideration of family-related patent co-pending litigation should likewise be a consideration in ruling on a motion to transfer.

"Reading *In re EMC Corp.* in light of other recent Federal Circuit cases and other Supreme Court case law, [citation omitted], [ ]  [leads to the conclusion that] it is not *per se* impermissible, when considering 'practical considerations' regarding judicial economy in this context, to consider the existence of other related litigation filed in the proposed transferor or transferee districts."[87] Here, the transferor district has a presently pending lawsuit with patent infringement causes of action on a family-related patent.  The proposed transferee district, the Southern District of New York, has no related case.

---

[86] *In re Barnes & Noble , Inc.*, 743 F.3d at 1383 n.1.

[87] *McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 U.S. Dist. LEXIS 178823, at *43 (D. Del. Dec. 13, 2013), *adopted*, 2013 U.S. Dist. LEXIS 181269 (D. Del. Dec. 30, 2013); *see also id.* at *44 (consider the existence of later-filed cases); *Good Tech. Corp. v. AirWatch, LLC*, Civ. Act. No. 14-1092-LPS-CJB, 2015 U.S. Dist. LEXIS 6841, at *27 n.7 (D. Del. Jan. 21, 2015)  (stating, "[B]ecause the cases at issue here were filed shortly after the instant suit, the Court does not believe that considering them contravenes the spirit of the Federal Circuit's guidance. *See, e.g., McRo, Inc., 2013 U.S. Dist. LEXIS 178823, 2013 WL 6571618, at *10 n.13* (distinguishing *In re EMC Corp.*).")"); *Abstrax, Inc. v. Hewlett-Packard Co.*, No. 2:14-cv-158-JRG, 2014 U.S. Dist. LEXIS 155805, at *16 (E.D. Tex. Nov. 3, 2014) (considering post-suit-filing events; specifically, the progression of the case towards claim construction and Defendant's answer-filing and delay in filing its motion to transfer); *TQP Dev., LLC v. Yelp Inc.*, No. 2:12-CV-656, 2013 U.S. Dist. LEXIS 141076, at *18 (E.D. Tex. Sept. 29, 2013) (considering post-suit-filing events; specifically, the Court's holding of several consolidated claim-construction hearings, filings of subsequent suits, defendants actions in filing or not filing motions to transfer, and the patent's expiration).

### 5) Local Interest in Having Localized Interests Decided at Home Weighs Against Transfer.

Because the patent-in-suit covers medical products sold and marketed in Texas and this District,[88] this District has a local interest in the outcome of this case.[89] Thus, this factor does not support venue transfer.

### 6) Forum's Familiarity with the Governing Law Weighs Against Transfer.

"[P]olicies require a transferee forum to apply the law of the transferor court[.]"[90] "'The legislative history of *[Section] 1404(a)* certainly does not justify the rather startling conclusion that one might get a change of law as a bonus for a change of venue.'"[91]  The Eastern District of Texas and the Southern District of New York are free to interpret federal law differently from each other.[92]

Thus, because Eastern-District-of-Texas law applies, this factor weighs against transfer. The Eastern District's greater familiarity with its governing law weighs against transfer.

---

[88] Lambert Decl. at ¶6.

[89] *Stragent LLC v. Audi AG*, No. 6:10cv227 LED-JDL, 2011 U.S. Dist. LEXIS 79688, at *28 (E.D. Tex. July 18, 2011).

[90] *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990).

[91] *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 369 (4th Cir. 2015) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 635-36 (1964)).

[92] *See Southwestern Bell Telephone, L.P. v. Arthur Collins, Inc*., Civ. Act. No. 3: 04-CV-0669-B, 2005 WL 6225305, at *5 (N.D. Tex. Oct. 14, 2015) (discussing *stare decisis* and its application between district courts).

14

Further, issues of state law often arise in patent cases; issues such as legal title to a patent,[93]

patent ownership,[94]  construction of patent-assignment agreements,[95] shop rights,[96] and choice of

law rules.[97] If this case were to be transferred, such state-law issues will be decided by Texas state

law where this suit was filed.[98] Thus, the applicability of Texas state law weighs against transfer.

### 7)   Avoidance of Unnecessary Problems of Conflicts of Laws or in the Application of Foreign Law Weighs Against Transfer.

Transfer would raise the issue of which district's governing law would apply to this

action. Not transferring this suit would avoid any conflict-of-laws issue. Thus, this factor weighs

against transfer.

## III.     CONCLUSION AND PRAYER

Plaintiff respectfully prays that the Court deny Defendant's Motion to Dismiss or Transfer.

Further, plaintiff requests the opportunity to conduct discovery related to venue.

Respectfully submitted,

**Ramey & Schwaller, LLP**

By: /s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)

---

[93] *Abraxis Bioscience, Inc. v. Navinta LLC*, 672 F.3d 1239, 1243 (Fed. Cir. 2011) (O'Malley, J. dissenting), *cert. denied*, 132 S. Ct. 115 (2011).

[94] *Id.*

[95] *Id.*

[96] *Schroeder v. Tracor, Inc.*, No. 99-1281, 1999 U.S. App. LEXIS 30386, at *4 (Fed. Cir. Nov. 5, 1999), *cert. denied*, 530 U.S. 1215 (2000).

[97] *Schroeder*, No. 99-1281, 1999 U.S. App. LEXIS 30386, at *4.

[98] *Carruthers v. Amtrak*, No. 95 Civ. 0369 (PKL), 1995 U.S. Dist. LEXIS 8740, at *12 (S.D.N.Y. June 26, 1995).

wramey@rameyfirm.com

**Hicks Thomas, LLP**

John B. Thomas (Co-Counsel)
jthomas@hicks-thomas.com
Texas Bar No. 19856150
700 Louisiana Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 547-9100
Facsimile: (713) 547-9150

**Attorneys for Traxcell**

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served today, February 2, 2018, with a copy of the foregoing via the Court's CM/ECF system.

/s/ William P. Ramey, III

William P. Ramey, III

16