# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| EMED TECHNOLOGIES CORPORATION, § § *Plaintiff*, § § v. § § REPRO-MED SYSTEMS, INC. d/b/a RMS § MEDICAL PRODUCTS, § § *Defendant*. § | Case No. 2:17-CV-728-WCB-RSP |

## MEMORANDUM OPINION AND ORDER

Before the Court is <u>Defendant RMS's Motion to Dismiss or Transfer Venue under Rule 12(b)(3)</u>. Dkt. No. 7. The motion is GRANTED, and this action is TRANSFERRED to the United States District Court for the Southern District of New York.

## BACKGROUND

Plaintiff EMED Technologies Corp. ("EMED") is a Nevada corporation with its principal place of business in El Dorado Hills, California. EMED owns U.S. Patent No. 9,808,576 ("the '576 patent"), which is entitled "Devices and Methods for Protecting a User from a Sharp Tip of a Medical Needle." On November 7, 2017, EMED filed this action alleging that defendant RMS's HIgH-Flo subcutaneous safety needle sets infringe the '576 patent.

Defendant Repro-Med Systems, Inc. ("RMS"), a New York corporation with its principal place of business in Chester, New York, moves to dismiss this action due to improper venue or, in the alternative, to transfer it to the Southern District of New York.[1] EMED responded that

---

[1] Chester is in Orange County, New York, which is within the Southern District of New York. 28 U.S.C. § 112(b).

venue is proper, but also requested the right to conduct discovery related to venue. Dkt. No. 15. Judge Payne granted EMED's request for limited venue discovery, Dkt. No. 30, and allowed the parties to file supplemental briefs following discovery, which they did, Dkt. Nos. 36, 41, 42.

## DISCUSSION

RMS moves to dismiss under Federal Rule of Civil Procedure 12(b)(3), or to transfer under 28 U.S.C. § 1404(a) or § 1406(a).[2] Venue in patent cases is governed by 28 U.S.C. § 1400(b), which provides that an action for patent infringement may be brought in the judicial district where the defendant either "resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." For domestic corporations, "'reside[nce]' in § 1400(b) refers only to the State of incorporation." TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514, 1521 (2017). Because RMS is incorporated in New York, that is the State in which it resides. Therefore, venue is proper in this judicial district only if RMS has a regular and established place of business in this district.

As the Federal Circuit explained in In re Cray Inc., 871 F.3d 1355 (Fed. Cir. 2017), there are "three general requirements" to determine if a defendant has a regular and established place of business in a particular district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." Id. at 1360. The court explained that the "place" must be "a physical, geographical location in the district from which the business of the defendant is carried out." Id. at 1362. That place of business must be "regular"—i.e., "steady, uniform, orderly, and methodical,"—and

---

[2] Although RMS's motion does not cite section 1406, RMS argues that venue is not proper and asks the court to "dismiss the case or transfer it to the Southern District of New York." Dkt. No. 7, at 4. If venue is improper, transfer is appropriate under section 1406 and not under section 1404, which concerns transfer for the convenience of the parties and in the interests of justice. See In re ZTE (USA) Inc., No. 2018-113, 2018 WL 2187782, at *4 (Fed. Cir. May 14, 2018).

"established"—i.e., "settled certainly, or fixed permanently." Id. at 1362–63 (alterations omitted). Finally, it must be "the place of the defendant," which the defendant "establish[ed] or ratif[ied]," and not, for example, "solely a place of the defendant's employee." Id. at 1363. Relevant considerations include "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place," and whether "the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place." Id.

In this case, in an effort to show that RMS has a "regular and established place of business" in this district, EMED relies on evidence that a distributor that RMS uses has a regular and established place of business here. Dkt. No. 36, at 2. The distributor is RightWay Medical Technologies, which has an office in McKinney, Texas, within this district. RightWay sells RMS's products, including RMS's allegedly infringing needle sets. Id. EMED further notes that RMS's website directs potential customers in this district to RightWay and to a second distributor, Owens & Minor, which according to EMED is located in Flower Mound, Texas, also within this district. Dkt. No. 19, at 2.

For purposes of venue, "[s]o long as a formal separation of [closely related] entities is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other." 14D Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3823 (4th ed. 2018). For example, Judge Payne recently rejected an argument that the presence in the district of a subsidiary, AT&T Services, Inc., could be imputed to that corporation's parent company, AT&T, Inc. Soverain IP, LLC v. AT&T, Inc., No. 2:17-cv-293, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017), report and recommendation adopted 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017). Judge Payne explained that to impute the presence of

3

one based on the presence of the other, the entities "must lack formal corporate separateness, which is a difficult standard to meet"; that standard, he explained, would not be met "even if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose." Id. (citing Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 334–35 (1925)); see also, e.g., Symbology Innovations, LLC v. Lego Sys., Inc., 282 F. Supp. 3d 916 (E.D. Va. 2017) (stores operated by Lego Brand Retail, Inc., insufficient to establish a place of business for Lego Systems, Inc.).

As RMS points out, there is abundant case law from other district courts holding that a distributor's place of business cannot establish venue for its supplier. See Wet Sounds, Inc. v. PowerBass USA, Inc., No. CV H-17-3258, 2018 WL 1811354, at *2 (S.D. Tex. Apr. 17, 2018) (third-party distribution centers insufficient); Hildebrand v. Wilmar Corp., No. 17-cv-2821, 2018 WL 1535505, at *3 (D. Colo. Mar. 29, 2018) (no venue where "the places of business on which Mr. Hildebrand bases venue are the physical locations of Wilmar's distributors, not those of Wilmar"); Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc., No. 5:14-cv-2022, 2018 WL 400326, at *9 n.8 (N.D. Ohio Jan. 12, 2018) ("While APS maintains that FPI has a close relationship with its distributors, this is still insufficient to establish that FPI has a regular and established business in the district, as any such physical presence of the distributor belongs to the distributor and not FPI."); Reflection, LLC v. Spire Collective LLC, No. 17-cv-1603, 2018 WL 310184, at *3 (S.D. Cal. Jan. 5, 2018) ("[A] distributor or subsidiary of a parent corporation selling the infringer's product does not demonstrate that a defendant has a regular and established business in this district."); Galderma Labs., L.P. v. Teva Pharm. USA, Inc., 290 F. Supp. 3d 599, 611 (N.D. Tex. 2017) (presence of third-party sales representatives insufficient); Patent Holder LLC v. Lone Wolf Distributors, Inc., No. 17-223060-civ, 2017 WL 5032989, at *6

(S.D. Fla. Nov. 1, 2017) (physical locations of defendant's dealers in the district "are irrelevant to the Court's analysis under § 1400(b)"); CAO Lighting, Inc. v. Light Efficient Design, No. 4:16-cv-482, 2017 WL 4556717, at *3 (D. Idaho Oct. 11, 2017) (holding that physical location of distributors does not establish venue because the defendant "does not own, rent, lease, or occupy these locations or any other property or equipment in the state"); JPW Indus., Inc. v. Olympia Tools Int'l, Inc., No. 3:16-cv-03153, 2017 WL 4512501, at *3 (M.D. Tenn. Oct. 10, 2017) (holding that "connections with distributors, retailers, and consumers in this district" insufficient); Talak Res. Inc. v. Evernote Corp., No. 16-cv-2167., 2017 WL 4269004, at *4 (N.D. Ill. Sept. 26, 2017) ("The Federal Circuit's decision in Cray leaves no room for Plaintiff to argue that the handful of non-employee, independent contractors present in this District constitute a 'regular and established place of business' for Defendant within the meaning of § 1400(b)."); Boston Sci. Corp. v. Cook Grp. Inc., 269 F. Supp. 3d 229, 248 (D. Del. 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); Bristol-Myers Squibb Co. v. Mylan Pharms. Inc., No. 17-cv-379, 2017 WL 3980155, at *17 (D. Del. Sept. 11, 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc., Case No. 17-cv-1803, 2017 WL 4155347, at *7 (N.D. Cal. Aug. 29, 2017) (using third-party company to sell products is insufficient); OptoLum, Inc. v. Cree, Inc., No. 16-cv-3828, 2017 WL 3130642, at *6 (D. Ariz. July 24, 2017) (selling infringing products at Home Depot stores in the district does not establish a place of business for the manufacturer); LoganTree LP v. Garmin Int'l, Inc., No. SA-17-CA-0098, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) ("It is well settled that the mere

presence of independent sales representatives does not constitute a 'regular and established place of business' for purposes of Section 1400(b)." (quoting Kabb, Inc. v. Sutera, No. 91-cv-3551, 1992 WL 245546, at *2 (N.D. Tex. Sept. 4, 1992))); see also Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc., 531 F.2d 1382, 1387 (7th Cir. 1976) ("In these cases we found venue improper in the subject district even though defendant's activities in the district included one or more of the following: maintaining an exclusive distributorship; establishing and maintaining some control over a chain of exclusive, independent distributors; maintaining an independent business man as a sales representative on a commission basis . . . ." (quoting Grantham v. Challenge-Cook Bros., 420 F.2d 1182, 1184–85 (7th Cir. 1969))).

Citing no case law, EMED responds that this uniform line of cases is distinguishable because "none of them involve the case where the use of a distributor is necessary to conduct the business of the defendant."[3] Dkt. No. 42, at 1. However, business necessity is insufficient to impute RightWay's place of business to RMS. EMED does not argue that RMS and RightWay (or Owens & Minor) are a single corporate entity or act as a single corporate entity. To the contrary, all of the testimony elicited from executives of both RightWay and RMS indicates that the two companies have an arms-length supplier-distributor relationship. See Dkt. No. 36-2, at 4–5 (RightWay's chief operating officer, testifying that RightWay does not have a distributor agreement with RMS, but merely "purchase[s] products from RMS and resell[s] them"); Dkt. No. 36-3, at 5–6, 9 (RMS's chief accounting officer, testifying that RMS sells directly to

---

[3] EMED's argument is based on the comment of RMS's chief financial officer, that RMS's customers "require RMS to conduct its business through a distributor" because it is more convenient for the customers. See Dkt. No. 42, at 1–2. For purposes of this motion, the Court assumes as true EMED's assertion regarding the necessity for RMS to rely on distributors to sell its products.

customers as well as through about a dozen distributors, and that it has a distribution agreement with only one).

Moreover, EMED's "necessary distributor" theory makes no sense in light of the language and purpose underlying the patent venue statute, 28 U.S.C. § 1400(b). Manufacturers frequently sell their products through wholesalers and retailers, rather than selling directly to customers. Except for firms with vertically integrated sales forces, wholesalers and retailers are typically independent entities. That is particularly true in the case of smaller manufacturers.

EMED's theory that the physical presence of "necessary distributors" is sufficient to lay venue for an action against a defendant in a district in which the defendant's distributors are located would largely overturn the decisions in TC Heartland and Cray, converting the test for venue in patent cases into one similar to the test for personal jurisdiction. The Federal Circuit's decision in Cray was explicit in rejecting that interpretation of the patent venue statute. See Cray, 871 F.3d at 1361 (warning courts to "be careful not to conflate showings that may be sufficient for other purposes, e.g., personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases").

The purpose of the statutory limits on venue in the patent venue statute was to protect defendants from being sued in forums distant from their place of incorporation or residence. See Cray, 871 F.3d at 1361 ("Congress adopted the predecessor to § 1400(b) as a special venue statute in patent infringement actions to eliminate the 'abuses engendered' by previous venue provisions allowing such suits to be brought in any district in which the defendant could be served." (quoting Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 262 (1961))). EMED's proposed "necessary distributor" rule would largely defeat that policy; indeed, given that smaller manufacturers are more likely to need to rely on distributors than larger ones, EMED's rule

would have the perverse effect of subjecting smaller corporations more subject to suit in distant forums than larger ones. The Court thus sees no justification for deviating from the consistent and substantial case law authority that the place of business of a corporation's distributor is not, without more, an appropriate venue for a patent infringement action.

EMED argues in the alternative that in the event that the Court is inclined to dismiss or transfer this action, the Court should grant it leave to amend its complaint. Dkt. No. 36, at 7–8. EMED's request is denied, for several reasons. First, under this court's local rules, "[m]otions for leave to file a document should be filed separately and immediately before the document for which leave is sought." Eastern District of Texas Local Rule CV-7(k). Because EMED failed to attach a proposed amended complaint, the request is deficient. See Fields v. Texas Dep't of State Health Servs., No. 4:16-cv-607, 2017 WL 4684003, at *8 (E.D. Tex. Oct. 19, 2017).

Second, the Court has considered all of the information the parties have filed as a result of the venue discovery that was allowed at EMED's behest. Even after those proceedings, EMED has failed to describe, or even allude to, any additional details it would be able assert in an amended complaint that would affect what appears to be a clearly required outcome.

Finally, and fundamentally, the problem with EMED's position is not a pleading inadequacy, but a failure of proof. Even after venue discovery and an opportunity for briefing, EMED has failed to show that venue is proper in this district. Without any suggestion regarding what EMED would propose to include in an amended complaint that would alter the analysis of the venue issue, there is no reason to believe that granting leave for EMED to amend its complaint would have any effect on the Court's disposition of RMS's Rule 12(b)(3) motion. The Court therefore concludes that EMED's open-ended request for leave to amend by adding

undefined new matter to its complaint is futile. See Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872 (5th Cir. 2000).[4]

One last matter is to determine whether to dismiss this action without prejudice or to transfer it under 28 U.S.C. § 1406 to the Southern District of New York. In a case in which the district court concludes that venue is improper in the district, it has broad discretion either to dismiss the action (ordinarily without prejudice) or to transfer the case to a district in which venue is proper, which in this case would be the Southern District of New York. See Caldwell v. Palmetto State Sav. Bank of S.C., 811 F.2d 916, 919 (5th Cir. 1987); Clasen v. Nat'l Bd. of Osteopathic Med. Exam'rs, Inc., No. 4:15-cv-625, 2015 WL 9489507, at *3 (E.D. Tex. Dec. 30, 2015); Hamilton v. United Parcel Serv., Inc., No. 1:11-cv-240, 2012 WL 760714, at *6 (E.D. Tex. Feb. 13, 2012).

---

[4] In its sur-reply brief, Dkt. No. 19, at 1–2, EMED complains that RMS's reply brief (eight pages in length not counting the conclusion and signature page) was longer than is permitted by the local rules for a reply brief on a non-dispositive motion. See Eastern District of Texas Local Rule CV-7(a)(2) (reply brief "to an opposed non-dispositive motion . . . shall not exceed five pages, excluding attachments"). But RMS's motion was a motion to dismiss under Fed. R. Civ. P. 12(b)(3), which is a dispositive motion, and the local rules provide that a reply brief to an opposed case dispositive motion "shall not exceed ten pages, excluding attachments." Eastern District of Texas Local Rule CV-7(a)(1). Local Rule CV-7(a)(2) states that "motions to transfer venue" are non-dispositive motions, but the motion in this case featured a request to dismiss and was not limited to a request to transfer venue. Accordingly, RMS was entitled to file a reply brief of up to ten pages in length without leave of court. In any event, the material in RMS's reply brief that EMED asks the Court to strike all pertains to RMS's motion to transfer under 28 U.S.C. § 1404, which the Court is not addressing, so EMED's objection to the length of the reply brief is moot.

EMED also complains that RMS's reply brief improperly incorporated 25 pages of other material by reference. Dkt. No. 19, at 1 & n.5 (complaining of the improper incorporation of Dkt. Nos. 164, 165, and 176). The Court is unable to discern what EMED is complaining about. RMS's reply brief contains no material that is incorporated by reference, and there are no docket entries numbered 164, 165, and 176 in this case, as the docket entries in this action currently end with number 45.

The parties have not briefed this issue in any detail. Courts faced with the choice between dismissal and transfer frequently consider factors such as any possible statute of limitations issues, whether the plaintiff's claim appears to have any significant prospect of success, and whether transferring the case rather than dismissing it would disserve judicial economy. The Court has not been provided with any guidance as to any of those considerations. Thus, the Court has no way of knowing whether dismissal would have any unintended adverse effect on the plaintiff's claims. Moreover, at this early stage in the case, the Court has no way of determining whether the plaintiff's claim may ultimately be found to have merit.

However, this case has been pending since November 2017, and EMED may be prejudiced by having to re-file and relinquish seven months of potential damages. See 35 U.S.C. § 286; Pers. Audio, LLC v. Google, Inc., 280 F. Supp. 3d 922, 936–37 (E.D. Tex. 2017). Further, the parties have filed briefs in EMED's motion for a preliminary injunction, in which EMED argues that it is suffering irreparable harm by RMS's continued alleged infringement. Dkt. No. 29, at 10–13. Under these circumstances, in the interest of avoiding potential prejudice to either party, the Court regards the preferable course to be to transfer the case rather than to dismiss it without prejudice.

For the foregoing reasons, RMS's motion is GRANTED and this action is transferred to the Southern District of New York.

IT IS SO ORDERED.

SIGNED this 4th day of June, 2018.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE